# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 03-2478

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

BRADLEY G. WHITE,

*Defendant-Appellant.*

————————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02 CR 40028—**J. Phil Gilbert**, *Judge.*

————————

ARGUED JANUARY 27, 2004—DECIDED MARCH 10, 2004

————————

Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

PER CURIUM. A jury found Bradley White guilty of maintaining a place to manufacture drugs, 21 U.S.C. § 856(a)(1), attempting to manufacture more than 50 grams of a mixture or substance containing methamphetamine, *id.* §§ 841(a)(1), 846, and possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). For guidelines purposes, the district court attributed 84.14 grams of methamphetamine to White, yielding a base offense level of 26. The court then added two levels for possession of a weapon during the commission of a drug offense, U.S.S.G. § 2D1.1(b)(1), and two levels for obstruction of justice, *id.* § 3C1.1. White's total offense level of 30 and Category II criminal history

triggered a resulting imprisonment range of 108 to 135 months, and the court sentenced White to concurrent sentences of 135 months. White appeals only his sentence and contends that the district court overstated the drug quantity.

Police officers executed a search warrant at White's house in Janesville, Illinois. White and two women, Angela Pheiffer and Peggy Moritz, were present during the search, which disclosed 1.8 grams of methamphetamine, several precursor chemicals including 31.4 grams of pseudo-ephedrine, seven firearms, and ammunition. Officers also located a white plastic jug under a bathroom vanity, and transferred the contents of that jug into two vials. Both vials were sent to the Illinois State Police laboratory. Testing of one vial, weighing 23.9 grams, determined that the substance contained methamphetamine. The other vial weighed 20.4 grams but was not tested.

A chemist employed by the Drug Enforcement Administration testified that the 31.4 grams of pseudo-ephedrine were enough to manufacture 11.5 grams of methamphetamine. At trial, five witnesses testified that White had sold methamphetamine (at $100 per gram). Pheiffer testified that White had told her he grossed $5,000—equivalent to sales of 50 grams—per week. Crystal Vincent testified that she purchased half grams of methamphetamine from White on five to ten occasions. Moritz testified that she purchased two or three grams twice and sometimes three times per week, and spent between $5,000 and $10,000 overall. James Heath testified that he bought quarter- or half-gram amounts ten times, that he bought one gram three or four times, and that White paid him for work in quarter- or half-gram amounts 15 to 20 times. William Price testified that he bought $50 to $100 worth of methamphetamine every day for two years. The probation officer's report omitted all of this information. Instead, it recounted a statement Pheiffer made to authorities that

White had sold one-eighth of an ounce (3.54 grams) of methamphetamine the night before the raid. It also reported that Vincent had said in a pretrial interview with government agents that she had purchased half grams twice per week for 23 weeks. The report made no mention of Moritz, Heath, or Price.

The court accepted the probation officer's recommendation and attributed 84.14 grams of methamphetamine to White from six sources: (1) 23.9 grams from the tested vial; (2) 20.4 grams from the untested vial; (3) 1.8 grams found in the house; (4) 11.5 grams that could theoretically be produced from the pseudoephedrine found in the house; (5) 3.54 grams based on Pheiffer's interview; and (6) 23 grams based on Vincent's interview. Neither the court nor the probation officer addressed any of the witness testimony from trial. The court then sentenced White under U.S.S.G. § 2D1.1(c)(7) for at least 50 grams, but less than 200 grams of methamphetamine.

On appeal White challenges the inclusion of the vial weighing 20.4 grams because its contents were never tested, as well as the drug amounts derived from the statements of Pheiffer and Vincent, which he says were not credible. We review a sentencing court's determination of drug quantity for clear error. *United States v. Chatmon*, 324 F.3d 889, 892 (7th Cir. 2003). For guidelines purposes, the government need only establish drug quantity by a preponderance of the evidence, and the court may consider information that would not otherwise have been admissible at trial. *United States v. Galbraith*, 200 F.3d 1006, 1011-12 (7th Cir. 2000).

White's first argument, that the contents from the untested vial cannot be factored into the drug quantity, gets him nowhere. White's premise is that absent chemical analysis the contents of the disputed vial cannot be known even though both vials were filled at the same time from the same source and the other vial tested positive for

methamphetamine. Inspector Hank Graves testified that he personally witnessed the contents of the plastic jug being emptied into the two vials. He testified that both containers were then sealed, and that each was marked with a sticker every time it was transferred to a new location to maintain a chain of custody. The court found that the contents of the two vials were the same. White offers us no reason to believe this finding to be clearly erroneous, and we thus cannot conceive of any reason why chemical analysis of the second vial's contents would have yielded a result different from the first.

White's second argument is that the district court should have disregarded the information provided by Vincent and Pheiffer because each is an admitted methamphetamine user, and neither was prosecuted for her role in White's drug enterprise. But determinations of witness credibility are entitled to great deference and "can virtually never be clear error." *United States v. Blalock*, 321 F.3d 686, 690 (7th Cir. 2003) (internal quotation marks and citation omitted). It is permissible for a sentencing court to calculate drug quantity by taking a witness's estimate of the amount of drugs she usually purchased and multiplying it by the number of times she bought drugs from the defendant. *United States v. Durham*, 211 F.3d 437, 444 (7th Cir. 2000). Furthermore, the sentencing court may credit testimony that is "totally uncorroborated and comes from an admitted liar, convicted felon, or large scale drug-dealing, paid government informant." *Blalock*, 321 F.3d at 690 (internal quotation marks and citation omitted); *see also Galbraith*, 200 F.3d at 1012. Our role is not to second-guess the district court's credibility determinations, and White points to nothing that justifies a finding of clear error by the district judge in crediting the testimony of Vincent and Pheiffer.

There is one issue with Vincent's testimony. At trial she testified that she purchased methamphetamine from White in half-gram increments five to ten times, which

would yield a total of 2.5 to 5 grams. But the report of Vincent's pretrial interviews says that she purchased half grams twice a week over a 23-week period from late summer 2001 until February 2002. The court used this second statement to attribute 23 grams to White. Where a sentencing court chooses to rely on one of two contradictory statements made by a witness, it should address the contradiction and explain why it credits one statement over the other. *United States v. Span*, 170 F.3d 798, 803 (7th Cir. 1999); *United States v. McEntire*, 153 F.3d 424, 437 (7th Cir. 1998); *United States v. Acosta*, 85 F.3d 275, 282 (7th Cir. 1996); *United States v. Duarte*, 950 F.2d 1255, 1266 (7th Cir. 1991). The court did not do so here, but the error is harmless because, as the judge recognized at the sentencing hearing, even if he reduced the amount of methamphetamine based on Vincent's testimony to the minimum of 2.5 grams, White's base offense level would be unaffected because the total attributed to him would still exceed 50 grams. *See* U.S.S.G. § 2D1.1(c)(7). Moreover, there was a wealth of other trial testimony from Moritz, Heath, and Price that the district court did not even address in calculating the drug quantity.

Lastly, we note that White received a concurrent sentence of 135 months on each of the three counts. The statutory maximum for violating 18 U.S.C. § 922(g)(1) is 120 months. *See* 18 U.S.C. § 924(a)(2). Accordingly—although it will not reduce the amount of time White spends in prison—we vacate the term of imprisonment on this count only and remand with instructions for the district court to impose a concurrent term within the statutory limit. We affirm White's sentence in all other respects.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.

**A true Copy:**

    **Teste:**

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*